UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

WENDELL DWAYNE O'NEAL,                           CIVIL NO. 07-3947 (ADM/JSM)

      Plaintiff,

v.                                              <u>REPORT AND RECOMMENDATION</u>

CITY OF ST. PAUL,
MANUEL CERVANTES,
JOHN HARRINGTON,
CORY MANTHEI,
YILENG VANG,
RAMSEY COUNTY,
SUSAN GAERTNER,
PATRICIA LESKE,
BOB FLETCHER,
GREG SLATTER
and
UNKNOWN RAMSEY DPTY. SHERIFF,

      Defendants.

JANIE S. MAYERON, United States Magistrate Judge

The above matter came on before the undersigned upon plaintiff's First Application for Entry of Default Against Yileng Vang for Answer Failure [Docket No. 10], Rules 56(c) Summary Judgement Motion [Docket No. 26], and another Rules 56(c) Summary Judgement Motion [Docket No. 27]; upon defendants' City of St. Paul, Manuel Cervantes, John Harrington, Cory Manthei, and Yileng Vang ("the City Defendants") Motion to Dismiss or for Summary Judgment [Docket No. 11]; and upon defendants' Ramsey County, Patricia Leske, Bob Fletcher, Greg Slatter and Unknown Ramsey County Deputy Sheriff ("the Ramsey County Defendants") Motion to Dismiss or in the Alternative for Summary Judgment [Docket No. 16].

This matter has been referred to the undersigned Magistrate Judge for a Report and Recommendation by the District Court pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 72.1(c).

For the following reasons, the Court recommends that defendants' motions to dismiss be granted, and plaintiff's motions for entry of judgment be denied.

## I.   BACKGROUND

This suit arises out of an incident which took place at the Radisson Hotel in St. Paul on August 15, 2005, at which time plaintiff was arrested by the St. Paul Police Department in the early hours of the morning, taken into custody, and released the next day after plaintiff pled guilty before Ramsey County District Judge George Stephenson to the petty misdemeanor charge of trespass.  Plaintiff moved to withdraw his guilty plea but failed to appear at the hearing scheduled by Judge Stephenson, who consequently upheld plaintiff's conviction.  See O'Neal v. State of Minnesota, 2006 WL 2947470 at *1 (Minn.Ct.App. Oct. 17, 2006), review denied Dec. 20, 2006 (hereafter "O'Neal I").  J udge Stephenson's denial of the petition for post-conviction relief was affirmed by the Minnesota Court of Appeals, and the Minnesota Supreme Court denied review on December 20, 2006.  2006 WL 2947470 at *1.  Plaintiff then filed a second petition for post-conviction relief on August 21, 2007.  See O'Neal v. State of Minnesota, 2008 WL 2496998 at *1 (Minn.Ct.App. June 24, 2008) (hereafter "O'Neal II").  The district court summarily denied the petition on the grounds that his claims were procedurally barred, the Minnesota Court of Appeals affirmed, and the Minnesota Supreme Court denied review on August 5, 2008.  Id.

Since plaintiff's conviction for trespass, he has filed a number of cases, in both Minnesota state court as well as federal court, regarding the incident and subsequent events relating to the incident.

In Ramsey County District Court in the State of Minnesota, plaintiff filed the following cases:

- O'Neal v. Crumb, St. Paul Police Department and City of St. Paul, Ramsey County Court File No. C9-06-3086 (filed April 4, 2006);

- O'Neal v. Moore, Graupmann, Fang, Crum and City of St. Paul, Ramsey County Court File No. C1-06-4913 (filed May 16, 2006);

- O'Neal v. Moore, Ramsey County Court File No. C6-06-6690 (filed July 5, 2006);

- O'Neal v. Cook, Crestline, Graupmann, St. Paul Police Department, and the City of St. Paul, Ramsey County Court File No. CX-06-6756 (filed July 11, 2006);

- O'Neal v. Moore, Ramsey County Court File No. C2-06-7240 (filed July 26, 2006);

- O'Neal v. Fang sic Vang, Skarda, Riley, Choi, St. Paul City Attorney's Office, and the City of St. Paul, Ramsey County Court File No. CX-06-7244 (filed July 26, 2006).

Of these Ramsey County District Court matters, Case No. C9-06-003086 was dismissed by the Court after plaintiff agreed with defendant's motion to dismiss. See Order of Judge De Courcy dated June 15, 2006 (Hanson Aff., Ex. 4). Case No. C1-06-4913 was removed to federal court by defendants. Case Nos. C2-06-7240, CX-06-6756, CX-06-7244 and C6-6690 were all dismissed by Order of Judge Higgs on April 5, 2007. See Order dated April 5, 2007 (Hanson Aff., Ex. 4).

In federal court, plaintiff filed the following cases in addition to the present case:

- O'Neal v. Unknown 911 Dispatcher, Vang, St. Paul Police Department and the City of St. Paul, 05-cv-1865 (RHK/JSM) (filed August 22, 2005);

- <u>O'Neal v. Unknown 911 Dispatcher, Vang, Higgins, St. Paul Police Department, St. Paul City Attorney, Assistant Prosecutor, Autumn X. Nelson, Office of Public Defender, City of St. Paul, Unknown Radisson Hotel Security Chief, and Unknown Radisson Hotel Manager</u>, 05-cv-1897 (JMR/FLN) (filed August 22, 2005);

- <u>O'Neal v. Fang –sic Vang, St. Paul Police Department, Autumn X. Nelson, City of St. Paul and Manuel Cervantes</u>, 05-cv-2464 (DSD/SRN) (filed October 25, 2005);

- <u>O'Neal v. Moore, Crum, Vang, Graupmann, Choi and the City of St. Paul</u>, 06-cv-2336 (ADM/JSM) (filed June 8, 2006);

- <u>O'Neal v. Cook, Radisson, City of St. Paul, Cervantes, Choi, Vang, Capital City Properties, St. Paul Port Authority Prpty., Unknown Manager, Unknown Security Person, Moore, Crestline Hotel Management and Carlson</u>, 07-cv-2803 (ADM/JSM) (filed June 13, 2007);

- <u>O'Neal v. City of St. Paul, Manuel Cervantes, Skarda, Andrea Miller, George Stephenson, John Choi, Jessica McConnelly, Ramsey County, Mr. Gill, Autumn X. Nelson and Unknown Student Attorney</u>, 07-cv-4230 (ADM/JSM) (filed October 11, 2007).

Case Nos. 05-1865 and 05-1897 were voluntarily dismissed by plaintiff.  In Case No. 05-2464, plaintiff was denied <u>in forma pauperis</u> status because he had failed to state a claim upon which relief could be granted and the case was dismissed.  Case No. 06-2336 was dismissed on summary judgment.  The remaining two cases, Nos. 07-2803 and 07-4230, in addition to the present case, are pending before this Court, and are subject to separate Report and Recommendations recommending dismissal.

In Case No. 05-2464, plaintiff sued Vang, the City of St. Paul, Autumn X. Nelson, and Manuel Cervantes.  Plaintiff alleged that on August 15, 2005, he was at the Radisson Hotel in St. Paul, Minnesota.  He placed a 911 call from the hotel to report that his wallet had been stolen at some earlier date by a St. Paul police officer named Higgins.  Officer Vang responded to plaintiff's 911 call from the hotel.  Upon arriving at

the hotel, Officer Vang arrested plaintiff for trespassing, and then transported him to a police facility.   Plaintiff alleged that Officer Vang deprived him of certain personal property, without adequate legal cause.   Plaintiff later pled guilty to the trespassing charge.   During the guilty plea proceeding, the City of St. Paul was represented by City Attorney Manuel Cervantes, and plaintiff was represented by Ramsey County Public Defender Autumn. Nelson.   Plaintiff alleged that Cervantes and Nelson coerced him into pleading guilty against his will, by threatening to have additional charges brought against him if he contested the pending trespassing charge.   Plaintiff sought relief under 42 U.S.C. §§ 1983, 1985 and 1988 for false arrest, unlawful detention, unlawful deprivation of property, unlawful entry, search and seizure, intentional infliction of mental anguish and emotional distress, malicious prosecution, and ethnic intimidation. See Civil Rights Complaint, Case No. 04-cv-2464 (DSD/SRN).

In Case No. 06-2336, plaintiff brought suit against Shari Moore, Pete Crum, Officer Vang, Officer Graupmann, City Attorney Choi and the City of St. Paul.   Plaintiff claimed that defendants violated the MGDPA regarding his request for records following his arrest and conviction for trespass from the August 15, 2005 incident at the Radisson Hotel.   Plaintiff sought relief under the MGDPA for defendants' alleged failure to create records, their creation of allegedly false records, their statements regarding the requirements of the MGDPA, their alleged efforts to conceal records, and ultimately, their failure to produce records sought by plaintiff at all or on a timely basis.   Plaintiff also asserted that defendants' conduct relating to the encounter with him on August 15, 2005 at the Radisson Hotel, and the subsequent handling of his request for records bearing on that encounter, amounted to discrimination against plaintiff, a violation of his

civil rights, and a denial of equal protection under the law.  Additionally, plaintiff claimed that the City of St. Paul's policies, procedures, supervision, and training of its employees with respect to their obligations to respond to emergency calls, comply with the MGDPA, prepare reports, and accurately record information, violated his civil rights and various provisions of the MGDPA.  Plaintiff also claimed that defendants discriminated against him, failed to properly train and supervise, and implemented unlawful policies, practices, customs and procedures, all of which violated the Minnesota Human Rights Act ("MHRA"), 42 U.S.C. §§1981, 1983, and 2000 et seq. See Second Amended Complaint, 06-cv-2336 (ADM/JSM).

On September 11, 2007, plaintiff commenced the instant action, and shortly after, filed an Amended Complaint, which is now the subject of the current motions.  [Docket No. 3].  In this pleading, plaintiff first described the parties he was suing and why.

- Plaintiff's claims against the City of St. Paul are for discrimination involving his detention on August 15, 2005, because the City instituted an unlawful policy for warrantless misdemeanor arrests. Am. Complaint, ¶ 9.

- Plaintiff complains that Manuel Cervantes, former St. Paul City Attorney, either created the unlawful policy for warrantless misdemeanor arrests or acquiesced its creation by John Harrington, St. Paul Chief of Police, for the purpose of obtaining guilty pleas from detained defendants accused of misdemeanor offenses. Id., ¶ 10.

- Plaintiff claims that Chief Harrington either created the unlawful arrest policy or failed to properly train or supervise Officer Vang. Id., ¶ 11.

- Plaintiff complains that Officer Cory Manthei of the Internal Affairs Department of the St. Paul Police conspired to deny plaintiff procedural due process regarding an internal affairs complaints plaintiff filed against Officer Vang and Officer Graupmann. Id., ¶ 12.

- Plaintiff claims that Officer Vang arrested him on August 15, 2005 based upon the unlawful policy because he had no permanent address or was not a resident of Minnesota.  Id., ¶ 13.

- Plaintiff claims that Ramsey County discriminated against him with respect to his detention on August 15, 2005, based upon the City of St. Paul's unlawful arrest policy, and failed to provide him with the opportunity for bail.  Ramsey County later attempted to conceal this conduct by manufacturing falsified records in order to discredit him in a civil action filed by plaintiff.  Id., ¶ 14.

- Plaintiff claims that Susan Gaertner, Ramsey County Attorney, was ultimately responsible for the manufacture of falsified records by Ramsey County.  Id., ¶ 15.

- Plaintiff claims that Patricia Leske, a claims administrator for Ramsey County, conspired to violate two subpoenas plaintiff issued for inspection of Ramsey County's detention and property records, and that she also obstructed justice when she gave him records that were known to be falsified.  Id., ¶ 16.

- Plaintiff claims that Bob Fletcher, Ramsey County Sheriff, is the policymaker for the Ramsey County Jail and is ultimately responsible for acts and omissions of that agency.  Id., ¶ 17.

- Plaintiff claims that Greg Slatter, a Ramsey County Sheriff's Deputy, was involved in the creation of business records falsified by Ramsey County in order to discredit plaintiff in his civil action.  Id., ¶ 18.

- Plaintiff claims that currently unknown deputies of the Ramsey County Sheriff's Department also created the falsified business records.  Id., ¶ 19.

Plaintiff alleged the following facts that bear on the motions before this Court:

In Count I, plaintiff alleged that on July 22, 2005, the City of St. Paul dispatched St. Paul Officer Higgins to an address at 180 Kellogg Boulevard in l, at which time Officer Higgins came into contact with plaintiff, who showed him a driver's license in his wallet.  Am. Complaint, ¶ 20.  Plaintiff then went to Alabama, where he discovered his wallet missing; he called the St. Paul Police Department, and was informed that his

wallet was in the St. Paul Police Department's property room. Id., ¶¶ 21-22. On August 14, 2005, plaintiff returned to Minnesota and called 911 at 12:59 a.m. on August 15, 2005 from the Radisson Hotel in order to retrieve his wallet. Id., ¶ 23. Officer Vang was dispatched to the hotel; he did not enter the hotel but instead parked his patrol car down the street, and with his service weapon in hand, ordered plaintiff to come over to his car. Id., ¶ 24. Plaintiff refused and went back inside the Radisson and asked Nina Cook, a Radisson security officer, why Officer Vang had pulled his service weapon. Id., ¶ 25. When Cook did not respond, plaintiff called 911 again and requested someone to come to the scene and supervise Officer Vang. Id. Plaintiff set his green duffle bag on the floor of the Radisson Hotel lobby waiting room area before leaving the hotel to approach Officer Vang. Id., ¶ 27. Officer Vang again drew his weapon and placed plaintiff under arrest. Id. Officer Vang removed personal items from plaintiff's pockets, removed plaintiff's luggage from the hotel and transported plaintiff to the Ramsey County Sheriff's Department, where he was placed in a holding cell. Id., ¶¶ 28, 29. Officer Vang then went to the St. Paul Police Department where he broke into plaintiff's green duffel bag, searched it pursuant to City Policy 439.01 through 439.03, without inventorying its contents, and prepared a property report. Id., ¶ 30. Officer Vang created an arrest report for trespassing and pursuant to City Policy, 409.00, completed a citation alleging the trespass, which according to plaintiff was indicative that plaintiff had no permanent address, and for which plaintiff claimed was done to justify detaining plaintiff in jail. Id., ¶ 31. Officer Vang did not provide Ramsey County with a document authorizing detention of plaintiff for the trespass. Id., ¶ 33. On the basis of these facts, plaintiff alleged in Count I that Officer Vang and the City of St. Paul discriminated against him

with respect to his arrest and detention, in violation of Minn. Stat. §363A and 42 U.S.C. §§ 1983, 1985(1)(2)(3), 1986 and 2000.

In Count II, plaintiff alleged that Ramsey County and Sheriff Fletcher discriminated against him with respect to his detention, in violation of Minn. Stat. §363A and 42 U.S.C. §§ 1983, 1985(1)(2)(3), 1986 and 2000. Specifically, plaintiff claimed that Ramsey County and Sheriff Fletcher permitted him to remain in a holding cell for 9 ½ hours, without providing him the opportunity to post bail or appear before a magistrate. Am. Complaint, ¶ 34. As such, plaintiff alleged that Ramsey County, through City Policy 409.00, created an unlawful policy, practice, custom or procedure, and failed to properly train or supervise Sheriff Fletcher. Id., ¶ 35. Furthermore, plaintiff alleged that Sheriff Fletcher in turn failed to properly train or supervise his deputy sheriffs. Id., ¶ 36.

In Count III, plaintiff asserted the following allegations against Ramsey County, Ramsey County Attorney Gaertner, and claims administrator Leske: on August 8, 2007, he subpoenaed Ramsey County for his property and detention records from August 15, 2005, which he received on August 13, 2007. Am. Complaint, ¶¶ 37, 41. Plaintiff claimed that documents he received were false and Ramsey County manufactured the documents in order to discredit him and to obstruct justice in his federal case, O'Neal v. Moore, Case No. 06-2336. Id., ¶¶ 38, 40, 41, 43. The documents indicated that Ramsey County Deputy Slatter issued a U.S. Bank check to plaintiff in the amount of $80.00. Id., ¶ 39. Plaintiff issued a second subpoena on September 6, 2007; in response, he received a copy of the U.S. Bank check and other detention and property records that plaintiff claimed were manufactured. Id., ¶ 43. According to plaintiff,

despite the fact that plaintiff's fingerprint was on the front of the check and his signature was on the back, plaintiff alleged that he did not deposit or cash the U.S. Bank check at his bank, Wells Fargo.  Id., ¶¶ 44-46.  Plaintiff alleged that Ramsey County failed to provide plaintiff with all of the records he sought via the two separate subpoenas, and provided him with falsified records, including the Authority to Detain document allegedly drafted by Officer Vang and an accounting record.  Id., ¶ 47.  Based on these facts, in Count III, plaintiff charged Ramsey County, Ramsey County Attorney Gaertner and Ramsey County Claims Administrator Leske with obstruction of justice, misrepresentation, deceit and fraud, in violation of Minn. Stat. §363A and 42 U.S.C. §§ 1983, 1985(1)(2)(3), 1986 and 2000.

In Count IV, plaintiff claimed the following as to City Attorney Cervantes, Chief Harrington and Sgt. Manthei:

- City Attorney Cervantes either created arrest procedure 409.00 by which Officer Vang wrongfully arrested plaintiff on August 15, 2005, or acquiesced in its creation and usage as a matter of policy in the City of St. Paul so he could obtain plaintiff's guilty plea.  Am. Complaint, ¶¶ 48, 49.

- Chief Harrington created, acquiesced or failed to properly train and supervise Officer Vang in the usage of the arrest policy 409.00 and the property and evidence procedure 439.01.  Id., ¶ 50.

- Chief Harrington sent plaintiff a letter to plaintiff regarding plaintiff's internal affairs complaint against Officer Vang's alleged assault and theft.   Chief Harrington then conspired with other city officials to conceal and suppress plaintiff's right to appeal the administrative guilty plea arranged by City Attorney Cervantes.  Id., ¶ 51.

- Chief Harrington manipulated his staff by assigning Officer Crum to handle an MGDPA request, contrary to the MGDPA's requirement that an appointed clerk handle such requests, and further misrepresented the existence of an emergency call made on August 15, 2005.  Id., ¶ 52.

- Chief Harrington failed to disclose the disposition of internal affairs investigation complaints plaintiff filed against defendants Officers Vang and Graupmann in order to further deny plaintiff's investigation.  Id., ¶ 53.

- Chief Harrington discriminated against plaintiff with respect to two other internal affairs complaints involving the August 15, 2005 arrest and detention, and attempted to conceal and suppress the officers' wrongdoings in conspiracy with officials of the City of St. Paul.  Id., ¶ 54.

- Plaintiff appeared at the St. Paul Police Department after his release from detention to demand the return of his property.  Id., ¶ 55.  He immediately noticed that padlocks which had secured his luggage were missing, and that the bag had been rummaged through and items were missing.  Id., ¶ 56.  Plaintiff then requested the return of his items and was told that no other property was being held.  Id., ¶ 57.

- Plaintiff went to the internal affairs division and spoke with Sgt. Manthei, who interviewed plaintiff regarding the August 15, 2005 incident and plaintiff's theft and detention allegations.  Id., ¶ 58.  Sgt. Manthei refused to investigate plaintiff's complaint against Officer Vang, and was instrumental in the concealment and suppression of his August 15, 2005 911 call requesting dispatch of a supervisor of Officer Vang.  Id., ¶ 61.

Based on these facts, plaintiff claimed in Count IV, that City Atttorney Cervantes, Chief Harrington and Sgt. Manthei discriminated against him, created an unlawful arrest and detention policy, and denied him procedural and substantive due process, all in violation of Minn. Stat. §363A and 42 U.S.C. §§ 1983, 1985(1)(2)(3), 1986 and 2000.

In Count V, plaintiff alleged that Officer Vang, the City of St. Paul, City Attorney Cervantes, Chief Harrington, and Ramsey County instituted an unlawful policy for the seizure and intrusion of property, as set forth in policies 409.00, 439.01 and 439.03, which allowed Officer Vang to unlawfully remove and search his property.  Am. Complaint, ¶ 62.  According to plaintiff, Officer Vang failed to follow the City's property record requirements set forth in policy 439.03 by failing to inventory and itemize

plaintiff's belongings; City Attorney Cervantes and Chief Harrington, acquiesced in the institution of the policy; and the City of St. Paul and Chief Harrington failed to provide proper training or supervision of Officer Vang.   Id., ¶¶ 63-65.   Accordingly, plaintiff charged in Count V that Officer Vang, the City of St. Paul, City Attorney Cervantes, Chief Harrington and Ramsey County instituted an unlawful property deprivation policy in violation of Minn. Stat. §363A and 42 U.S.C. §§ 1983, 1985(1)(2)(3), 1986 and 2000.

In support of his claims pursuant to 42 U.S.C. §§ 1983 and 1985, plaintiff stated that he is a Melanic American and received social security for mental illness. Am. Complaint, ¶¶ 67-68.   Plaintiff also alleged that he is a member of a religious organization known as the Melanic Islamic Palace of the Rising Sun, which he believes may have motivated the transaction of the events of which he complains. Id., ¶ 69.

In the form of relief, plaintiff seeks a declaratory judgment against the City of St. Paul regarding the legality of its arrest, detention, and search and seizure procedures for persons who do not have a permanent address and who are accused of committing a misdemeanor and receive a citation.   Plaintiff also seeks punitive damages and $1.0 million per defendant per claim.

In lieu of answering plaintiff's Second Amended Complaint, the City Defendants moved for dismissal based on Fed. R. Civ. P. 12(b)(1) and 12(b)(6) or, in the alternative, for summary judgment.   The Ramsey Defendants moved for dismissal under Rule 12(b)(6), or in the alternative, for summary judgment pursuant to Rule 56.   Plaintiff has also filed motions for entry of a default judgment against Officer Vang, for summary judgment pursuant to Rule 56(c) against the City of St. Paul, City Attorney Choi, Chief Harrington, Sgt. Manthei and Officer Vang, and for summary judgment pursuant to Rule

56(c) against Ramsey County, County Attorney Gaertner, claims administrator Leske, Sheriff Fletcher, Deputy Slatter and Unknown Deputy Sheriff.

## II.    STANDARD OF REVIEW

### A.  <u>Rule 12(b)(1) Motion to Dismiss</u>

A motion to dismiss for lack of subject matter jurisdiction pursuant to Fed. R. Civ. P. 12(b)(1) may challenge the plaintiff's complaint either on its face or on the factual truthfulness of its averments.  <u>See</u> <u>Titus v. Sullivan</u>, 4 F.3d 590, 593 (8th Cir. 1993); <u>see also</u> <u>Osborn v. United States</u>, 918 F.2d 724, 729 n. 6 (8th Cir. 1990).   In a facial challenge to jurisdiction, the court restricts its review to the pleadings and affords the non-moving party the same protections that it would receive under a Rule 12(b)(6) motion to dismiss.  <u>See</u> <u>Osborn</u>, 918 F.2d at 729 n. 6.  The court presumes that all of the factual allegations in the complaint concerning jurisdiction are true and will not dismiss the claims unless the plaintiff fails to allege an essential element for subject matter jurisdiction.  <u>See</u> <u>Titus</u>, 4 F.3d at 593 (citing <u>Eaton v. Dorchester Dev., Inc.</u>, 692 F.2d 727, 731-32 (11th Cir. 1982)); <u>Osborn</u>, 918 F.2d at 729 n. 6.

In a factual challenge to jurisdiction, the court may consider matters outside the pleadings and the non-moving party does not benefit from the safeguards of 12(b)(6). <u>See</u> <u>Titus</u>, 4 F.3d 590 at 593; <u>Osborn</u>, 918 F.2d at 729 n.6.  "In short, no presumptive truthfulness attaches to the plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims.  Moreover, the plaintiff will have the burden of proof that jurisdiction does in fact exist."  <u>Osborn</u>, 918 F.2d at 730 (citing <u>Mortensen v. First Fed. Sav. & Loan Ass'n</u>, 549 F. 2d 884, 891 (3rd Cir. 1977)).

B.     **Rule 12(b)(6) Motion to Dismiss**

A civil complaint will be dismissed upon motion by a defendant, if the plaintiff has failed to plead an actionable claim for relief against that defendant.  Fed. R. Civ. P. 12(b)(6).   To state an actionable claim for relief, a complaint must allege a set of historical facts, which, if proven true, would entitle the plaintiff to some legal redress against the named defendants under some established legal theory.

> At this stage of the litigation, we accept as true all of the factual allegations contained in the complaint, and review the complaint to determine whether its allegations show that the pleader is entitled to relief. Bell Atlantic Corp. v. Twombly, --- U.S. ----, 127 S.Ct. 1955, 1964-65, 167 L.Ed.2d 929 (2007); Fed.R.Civ.P. 8(a)(2). The plaintiffs need not provide specific facts in support of their allegations, Erickson v. Pardus, --- U.S. ----, 127 S.Ct. 2197, 2200, 167 L.Ed.2d 1081 (2007) (per curiam), but they must include sufficient factual information to provide the "grounds" on which the claim rests, and to raise a right to relief above a speculative level. Twombly, 127 S.Ct. at 1964-65 & n. 3. Martin v. Aubuchon, 623 F.2d 1282, 1286 (8th Cir. 1980) ("the complaint must allege facts, which if true, state a claim as a matter of law").

Schaaf v. Residential Funding Corp., 517 F.3d 544, 549 (8th Cir. 2008).  Thus, to avoid dismissal, a complaint must include "enough facts to state a claim to relief that is plausible on its face." Twombly, 127 S. Ct. at 1974.  Pro se complaints are held to less stringent standards than formal pleadings drafted by lawyers.  See Haines v. Kerner, 404 U.S. 519, 520 (1972) (per curiam).   However, "[a]lthough it is to be liberally construed, a pro se complaint must contain specific facts supporting its conclusions". Martin v. Sargent, 780 F.2d 1334, 1337 (8th Cir. 1985).

As a general rule, the Court may not consider materials "outside the pleadings" on a motion to dismiss.  However, this does not mean that only the complaint itself may be reviewed.  As the court noted in Porous Media Corp. v. Pall Corp., 186 F.3d 1077, 1079 (8th Cir. 1999):

> When considering a motion for judgment on the pleadings (or a motion to dismiss under Fed. R. Civ. P. 12(b)(6)), the court generally must ignore materials outside the pleadings, but it may consider 'some materials that are part of the public record or do not contradict the complaint,' <u>Missouri ex rel. Nixon v. Coeur D'Alene Tribe</u>, 164 F.3d 1102, 1107 (8th Cir.), <u>cert. denied</u>, __U.S.__, No.98-1848, 1999 WL 319349 (U.S. June 24, 1999), as well as materials that are 'necessarily embraced by the pleadings.' <u>Piper Jaffray Cos. v. National Union Fire Ins. Co.</u>, 967 F. Supp. 1146, 1152 (D. Minn. 1997). <u>See also</u> 5A Charles Alan Wright & Arthur R. Miller, <u>Federal Practice and Procedure: Civil 2d</u> §1357, at 199 (1990)(court may consider 'matters of public record, orders, items appearing in the record of the case, and exhibits attached to the complaint').

Therefore, documents attached to the complaint may be reviewed on a motion to dismiss, since they are part of the pleading,[1] as well as documents that are part of a public record.

C.   <u>**Summary Judgment**</u>

Summary judgment is proper when, drawing all reasonable inferences in favor of the non-moving party, there is no genuine issue of any material fact, and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. 56; <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 250 (1986).  The moving party bears the burden of showing that there are no genuine issues of material fact.  <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322-23 (1986).  If the moving party carries its burden, the nonmoving party must point to specific facts in the record that create a genuine issue for trial.  <u>Anderson</u>, 477 U.S. at 256.  The non-moving party must "substantiate his allegations with sufficient probative evidence that would permit a finding in [their] favor based on more than mere

---

[1]      Rule 10(c) of the Federal Rules of Civil Procedure provides:  "**(c) Adoption by Reference; Exhibits.** . . . A copy of any written instrument which is an exhibit to a pleading is a part thereof for all purposes."

speculation, conjecture, or fantasy." <u>Wilson v. Int'l. Bus. Mach. Corp.</u>, 62 F.3d 237, 241

(8th Cir. 1995).

## III.   PLAINTIFF'S APPLICATION FOR ENTRY OF DEFAULT AGAINST YILENG VANG FOR FAILURE TO ANSWER

Plaintiff moved for default judgment against defendant Officer Vang for failure to

answer plaintiff's Complaint.   According to plaintiff, the summons and receipt were

returned on June 6, 2008, and showed that Officer Vang was served on April 30, 2008.

Plaintiff brings his motion pursuant to Rule 55 of the Federal Rules of Civil Procedure.

The Federal Rules of Civil Procedure provide that default or default judgment

may be entered against a party who "has failed to plead or otherwise defend as

provided by these rules and that fact is made to appear by affidavit or otherwise."   Fed.

R. Civ. P. 55(a).   A motion for default judgment must be preceded by an entry of default.

<u>See</u> Fed. R. Civ. P. 55(a) and (b).

Here, plaintiff asserts that Officer Vang is in default because he failed to answer

plaintiff's Complaint.   However, no such motion has been previously brought by plaintiff

to find Officer Vang in default, and no such judicial determination has been made.

Further, even if plaintiff had stylized his motion as a motion to find Officer Vang in

default, there is nothing to indicate that Officer Vang is not properly defending this case.

Officer Vang, along with the other City Defendants, filed a motion to dismiss or for

summary judgment in lieu of filing an answer on June 16, 2008.   Officer Vang and the

City Defendants have also filed motions and memoranda in response to plaintiff's

motions, and have complied with this Court's Orders.   Officer Vang has not failed "to

plead or otherwise defend" as is required by Rule 55(a), and consequently, there is no

reason to believe that he or the City Defendants were abdicating their defense of this case.

The Court consequently recommends that plaintiff's Motion for Default Judgment be denied.

## IV.    CITY DEFENDANTS' MOTION TO DISMISS OR FOR SUMMARY JUDGMENT

The City Defendants argued that the Complaint should be dismissed based on the Rooker-Feldman[2] doctrine because the Court lacks subject matter jurisdiction under Fed. R. Civ. P. 12(b)(1).  Additionally, the City Defendants contended that plaintiff failed to state a claim for relief pursuant to Fed. R. Civ. P. 12(b)(6) because his claims are barred by Heck v. Humphrey,[3] the statutes of limitation, and the doctrines of laches, collateral estoppel and res judicata; plaintiff has not established that the City Defendants have discriminated against him in violation of 42 U.S.C. §§ 1983, 1985, 1986, 1988, 2000a and Minn. Stat. § 363A; plaintiff's claims of false arrest and unlawful detention fail as a matter of law; and plaintiff's claims are barred by immunities set forth in Minn. Stat. § 466, et seq.[4]

For the reasons set forth below, this Court rejects the City Defendants' Rule 12(b)(1) challenge to subject matter jurisdiction based on the Rooker-Feldman doctrine,

---

[2]    District of Columbia Court of Appeals v. Feldman, 460 U.S. 462 (1983); Rooker v. Fidelity Trust Co., 263 U.S. 413 (1923).

[3]    Heck v. Humphrey, 512 U.S. 477 (1994).

[4]    Defendants also moved to dismiss the Amended Complaint based on the fact that plaintiff failed to serve them within 120 days of filing the Complaint, in violation of Rule 4(m) of the Federal Rules of Civil Procedure.  Plaintiff was granted in forma pauperis status on February 29, 2008 [Docket No. 7] and he served defendants on May 28, 2008 [Docket No. 9].  The Court finds that plaintiff had good cause for delaying service of the Amended Complaint on the City Defendants and that service was timely.

but does conclude that the plaintiff's case against them must be dismissed based on the doctrine expressed in Heck v. Humphrey and the preclusion doctrine of res judicata.

### A.     Subject Matter Jurisdiction and the Rooker-Feldman Doctrine

The City Defendants contended that the Court lacked subject matter jurisdiction because all of the counts alleged by plaintiff in the present case are inextricably intertwined with the Minnesota state court's dismissal of his cases with prejudice.  City Def. Mem. in Support, p. 7.  As such, according to the City Defendants, the Rooker-Feldman doctrine prohibits the Court from considering plaintiff's claims because they were already addressed by the Ramsey County District Court.  Id.  This Court disagrees.

"The Rooker-Feldman doctrine stands for the general principle that, with the exception of habeas corpus petitions, lower federal courts lack subject matter jurisdiction to review state court judicial decisions. D.C. Court of Appeals v. Feldman, 460 U.S. 462, 482-83, 103 S.Ct. 1303, 75 L.Ed.2d 206 (1983); Rooker v. Fidelity Trust Co., 263 U.S. 413, 415-16, 44 S.Ct. 149, 68 L.Ed. 362 (1923).  Such jurisdiction is vested only in the United States Supreme Court.  Lemonds v. St. Louis County, 222 F.3d 488, 492 (8th Cir. 2000))."  Prince v. Arkansas Bd. of Examiners in Psychology, 380 F.3d 337, 340 (8th Cir. 2004).

As such, a federal plaintiff who was unsuccessful in state court "is barred from seeking what in substance would be appellate review of the state judgment in a United States district court based on the losing party's claim that the state judgment itself violates the loser's federal rights."  Johnson v. De Grandy, 512 U.S. 997, 1005-1006 (1994) (citing Feldman, 460 U.S. at 482; Rooker, 263 U.S. at 416).  The Rooker-

Feldman doctrine not only prohibits "straightforward appeals" of state judgments, but also federal review of matters "inextricably intertwined" with state court rulings.  See Ballinger v. Culotta, 322 F.3d 546, 548 (8th Cir. 2003) (citing Lemonds, 222 F.3d at 492).  "A general federal claim is inextricably intertwined with a state court judgment 'if the federal claim succeeds only to the extent that the state court wrongly decided the issue before it.'"  Lemonds, 222 F.3d at 493 (quoting Pennzoil Co. v. Texaco, Inc., 481 U.S. 1, 25 (1987) (Marshall, J., concurring)).

In Exxon Mobil Corp. v. Saudi Basic Industries Corp. the Supreme Court reminded litigants of the limited reach of the Rooker-Feldman doctrine:

> The Rooker-Feldman doctrine, we hold today, is confined to cases of the kind from which the doctrine acquired its name: cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments.[5]  Rooker -Feldman does not otherwise override or supplant preclusion doctrine or augment the circumscribed doctrines that allow federal courts to stay or dismiss proceedings in deference to state-court actions.

544 U.S. 280, 284, 125 S.Ct. 1517, 161 L.Ed.2d 454 (2005) (emphasis added).

While plaintiff brought some of the same claims against some of the City Defendants in prior state-court actions, that in itself is not a basis for invoking the Rooker-Feldman doctrine.   The Rooker-Feldman doctrine only applies to those situations where a claimant has sued and lost in state court and then commences an action in federal court seeking relief for an injury cased by the state court's decision.  As

---

[5]      For example, as the Supreme Court noted earlier in the Exxon Mobile decision, "Rooker was a suit commenced in Federal District Court to have a judgment of a state court, adverse to the federal court plaintiffs, 'declared null and void.' 263 U.S., at 414, 44 S.Ct. 149. In Feldman, parties unsuccessful in the District of Columbia Court of Appeals (the District's highest court) commenced a federal-court action against the very court that had rejected their applications."  544 U.S. at 283.

the Fourth Circuit succinctly explained, following the Supreme Court's decision in <u>Exxon</u>

<u>Mobil Corp</u>:

> Under our prior cases, the <u>Rooker-Feldman</u> doctrine had been interpreted broadly to provide that the loser in a state-court adjudication was barred from bringing suit in federal court alleging the same claim or a claim that could have been brought in the state proceedings. <u>Exxon</u> teaches, however, that the <u>Rooker-Feldman</u> doctrine applies only when the loser in state court files suit in federal district court seeking redress for an injury allegedly caused by the state court's decision itself. Because Davani's suit does not challenge the state court's decision, and it instead seeks redress for an injury allegedly caused by Appellees, the <u>Rooker-Feldman</u> doctrine does not apply, and the district court's dismissal of Davani's complaint was in error.

<u>Davani v. Virginia Dept. of Transp.</u>, 434 F.3d 712, 713 (4th Cir. 2006).  "Rather, <u>Rooker-</u>

<u>Feldman</u> is implicated in that subset of cases where the losing party in a state court

action subsequently <u>complains about that judgment and seeks review and rejection of</u>

<u>it.</u>"  <u>Skit Intern., Ltd. v. DAC Technologies of Arkansas, Inc.</u>, 487 F.3d 1154, 1157 (8th

Cir. 2007) (citing <u>Exxon Mobil</u>, 544 U.S. at 292) (emphasis added)).

Here, plaintiff's Amended Complaint makes no mention of the state court

decision by Judge Higgs dismissing five of plaintiff's cases.  Stated otherwise, plaintiff is

not seeking redress from any injury he may have suffered from Judge Higgs' Order

dismissing his five cases – he is not seeking to declare Judge Higgs' Order null and

void or to sue Judge Higgs; he had not sought review of the Order and rejection of it.

Instead, plaintiff is seeking redress for injuries allegedly caused by the City and Ramsey

County Defendants.   <u>Rooker-Feldman</u> has no application and accordingly, the City

Defendants' motion to dismiss on that basis should be denied.

### B.    Rule 12(b)(6) – Failure to State A Claim

Having rejected the City Defendants' subject matter challenge, the Court now addresses their argument that plaintiff's claims against them should be dismissed because they fail to state a claim upon which any relief can be granted.

### 1.    Heck v. Humphrey

To the extent that plaintiff by his claims is seeking to challenge his arrest and trespass conviction, these claims are barred by the doctrine articulated in Heck v. Humphrey.  In that case, the Supreme Court held that "[i]n order to recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid...a [42 U.S.C.] 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus."  512 U.S. 477, 486-87 (1994).

In the present case, Counts I and IV of the Amended Complaint are premised  in part on a challenge by plaintiff to his arrest and trespass conviction for which if he were to be successful, would require a determination that his conviction was invalid.  In particular, to the extent that plaintiff claimed he was unlawfully arrested, or that his arrest was based on unlawful policies or the failure to train and supervise Vang regarding arrests, these are claims which are designed to challenge his conviction for trespassing.  As such, they are barred by Heck v. Humphrey because plaintiff has neither alleged nor presented evidence that his trespass conviction was reversed, declared invalid or vacated.  To the contrary, plaintiff's conviction has been upheld by

both the Minnesota Court of Appeals as well as the Minnesota Supreme Court.  See O'Neal I, 2006 WL 2947470 at *1.  Plaintiff then filed a second petition for post-conviction relief on August 21, 2007.  See O'Neal II, 2008 WL 2496998 at *1.  The district court summarily denied the petition on the grounds that his claims were procedurally barred, the Minnesota Court of Appeals affirmed and the Minnesota Supreme Court denied review.  Id.  Because plaintiff's conviction for trespass has never been declared invalid in any state or federal post-conviction proceeding, plaintiff cannot maintain a civil action seeking damages (or any other relief) based on that conviction.  Therefore, to the extent that Counts I and IV are based on the propriety of his arrest and trespass conviction, the City Defendants' motion to dismiss should be granted for failure to state a claim upon which relief granted.

## 2.    Collateral Estoppel and Res Judicata

The City Defendants also contended that the doctrines of collateral estoppel and res judicata bar plaintiff from challenging his trespassing conviction, and also bar his claims of alleged false arrest and imprisonment, and violations of 42 U.S.C. §§ 1981, 1983, 1985, 1986, 1988 and 2000a.  City Def. Mem., p. 12.  Specifically, the City Defendants contend that O'Neal v. Fang -sic Vang, et al., Case No. 05-2464 (D.Minn., filed Oct. 25, 2005) (DSD/SRN) and the final judgment on plaintiff's criminal conviction bars these claims.  The Court agrees, and also finds that the Order dismissing the case of O'Neal v. Moore, et al., Case No. 06-2336 (D.Minn., filed June 8, 2006) (ADM/JSM), precludes the exercise of jurisdiction of this case under res judicata.

"'Res judicata' is the term traditionally used to describe two discrete effects: 1) what we now call claim preclusion, which is a valid final adjudication of a claim

precludes a second action on that claim or any part of it; and 2) issue preclusion, long called 'collateral estoppel,' which traditionally occurs where an issue of fact or law, actually litigated and resolved by a valid final judgment, binds the parties in a subsequent action, whether on the same or a different claim.'"   Leonard v. Southwestern Bell Corp. Disability Income Plan, 341 F.3d 696, 701 (8th Cir. 2003) (quoting Thomas v. General Motors Corp., 522 U.S. 222, 233 n. 5 (1998)).

A party asserting that a claim is barred by res judicata (claim preclusion) must show: "(1) the first suit resulted in a final judgment on the merits; (2) the first suit was based on proper jurisdiction; (3) both suits involve the same parties (or those in privity with them); and (4) both suits are based upon the same claims or causes of action." Costner v. URS Consultants, Inc., 153 F.3d 667, 673 (8th Cir. 1998) (citations omitted). "Under res judicata 'a final judgment on the merits of an action precludes the parties from relitigating issues that were or could have been raised in that action.'"  Yankton Sioux Tribe v. U.S. Dept. of Health and Human Services, 533 F.3d 634, 639 (8th Cir. 2008) (quoting Allen v. McCurry, 449 U.S. 90, 94 (1980)) (emphasis added).  Thus, "'[a] claim is barred by res judicata if it arises out of the same nucleus of operative facts as the prior claim.'"  Banks v. International Union Electronic, Elec., Technical, Salaried and Machine Workers, 390 F.3d 1049, 1052 (8th Cir. 2004) (quoting Lane v. Peterson, 899 F.2d 737, 742 (8th Cir. 1990)).

In order for order for collateral estoppel (issue preclusion) to bar litigation of an issue, (1) the issue sought to be precluded must be the same as that involved in the prior action; (2) the issue must have been litigated in the prior action; (3) the issue must have been determined by a valid and final judgment; (4) the determination must have

been essential to the prior judgment; and (5) the estopped party must be a party or in privity with a party to the prior litigation.  See Mille Lacs Band of Chippewa Indians v. State of Minn., 124 F.3d 904, 922 (8th Cir. 1997) (citations omitted).

Preclusion is an affirmative defense and the burden of proof to establish such a defense falls on the defendant.  See Taylor v. Sturgell, 128 S.Ct. 2161, 2179-80 (2008) (citation omitted).

In O'Neal v. Fang -sic Vang, et al., Case No. 05-2464 (D.Minn., filed Oct. 25, 2005) (DSD/SRN), plaintiff brought suit in this court against Unknown 911 Dispatcher, Vang, the City of St. Paul, Ramsey County Public Defender Autumn. Nelson and City Attorney Cervantes.  See Hanson Affidavit, Ex., 3 (Order dated December 29, 2005 (J. Doty)).  The case arose from the same August 15, 2005 incident at the Radisson Hotel and made the same allegations as here, that Officer Vang unlawfully detained him and deprived him of certain property, and that his guilty plea was unlawful.  It also alleged that Attorney Nelson and City Attorney Cervantes coerced him into pleading guilty. Plaintiff cited 42 U.S.C. §§ 1983, 1985, and 1988 as the basis for his claims of false arrest, unlawful detention, unlawful deprivation of property, unlawful search and seizure, intentional infliction of emotional distress, malicious prosecution and ethnic intimidation. See Order dated December 29, 2005 (J. Doty), pp. 2-3.

Judge Doty concluded that plaintiff's claims of false arrest and malicious prosecution were barred by Heck v. Humphrey, which bars any civil rights suit for damages that would imply the invalidity of a state criminal conviction.  512 U.S. 477, 486-87 (1994).  Judge Doty also dismissed plaintiff's claims of unreasonable search, unlawful detention and intentional infliction of emotional distress on the grounds that

they failed to allege any facts to support his claims, that his claim of unlawful deprivation of property did not constitute a § 1983 violation because he had a post-deprivation remedy pursuable in state court, and that his claim of ethnic intimidation stated no legal basis for such a claim.  See Dec. 29, 2005 Order, pp. 5-8.  Plaintiff's application to proceed in forma pauperis was denied and the action was summarily dismissed.  Id. at 1.

In O'Neal v. Moore, et al., Case No. 06-2336 (filed June 8, 2006) (ADM/JSM), plaintiff brought suit against Moore, Vang, and the City of St. Paul, in addition to two other St. Paul Police officers.  The suit also stemmed directly from the events of August 15, 2005.  In that case, which was extensively litigated by plaintiff, Judge Montgomery adopted this Court's Report and Recommendation and granted defendants' motion for summary judgment and denying plaintiff's motion for summary judgment.  O'Neal v. Moore, 2008 WL 4417327 at *1 (D.Minn. Sept. 24, 2008).

"It is well established that summary judgment is a final judgment on the merits for purposes of res judicata."  Dicken v. Ashcroft, 972 F.2d 231, 233 (8th Cir. 1992). See also King v. Hoover Group, Inc., 958 F.2d 219, 222 (8th Cir.1992) ("Once a court with jurisdiction to hear a matter has entered a final judgment on the merits, the parties and their privies are forever bound.").[6]

O'Neal v. Moore, et al., like O'Neal v. Fang -sic Vang, et al., dealt with the incident on August 15, 2005, and subsequent related events.  After his arrest, detention,

---

[6]     Plaintiff has appealed the Court's judgment in O'Neal v. Moore, et al. to the Eighth Circuit, which has not yet ruled on the appeal.  Nonetheless, "[i]t is well established in the federal courts that the pendency of an appeal does not diminish the res judicata effect of a judgment rendered by a federal court."  In re Ewing, 852 F.2d 1057, 1060 (8th Cir. 1988) (citations omitted).

release, and plea of guilty, plaintiff requested, pursuant to the MGDPA release of certain records from the St. Paul Police Department surrounding his encounter with and arrest by police on August 15, 2005.  Additionally, plaintiff filed an administrative complaint against Officer Vang alleging excessive force and theft, and complaints against Officers Vang and Graupmann with the Board of P.O.S.T.  Eventually, plaintiff received transcripts of the 911 emergency calls from the Radisson on August 15, 2005.  On May 17, 2006, plaintiff informed Moore that he believed the 911 records he had received were not complete because they did not contain his second 911 call requesting the dispatch of an officer to supervise Officer Vang, and that he still had not received police reports that were requested, including reports submitted by Officers Vang and Graupmann and a citizens arrest form submitted by Nina Cook. O'Neal v. Moore, 2008 WL 4417327 at *8.

Plaintiff's claims in Counts I, IV and V of unlawful arrest, detention, search and deprivation of property on the part of the City Defendants,[7] as well as his claims of the

---

[7]     The Court notes that although Harrington and Manthei did not appear as defendants in either of the previous federal cases, the preclusive effect of res judicata is still applicable.  The Court finds that Harrington and Manthei, as employees of the St. Paul Police Department, are in privity with the City of St. Paul, which was named as a defendant in both suits.  "'Privity' expresses the idea that as to certain matters and circumstances, people who are not parties to an action but who have interests affected by the judgment as to certain issues in the action are treated as if they were parties." SMA Servs., Inc. v. Weaver, 632 N.W.2d 770, 774 (Minn.App. 2001).  "The concept of 'privity' has not been strictly defined, but it expresses the idea that certain non-parties may be so connected with the litigation that the judgment should also determine their interests."   Brunsoman v. Seltz, 414 N.W.2d 547, 550 (Minn.App. 1987).   Here, Harrington and Manthei have interests affected by the issues resolved in both O'Neal v. Fang -sic Vang, et al., and O'Neal v. Moore, et al.  However, even if they were not in privity with the City of St. Paul, such a finding is irrelevant to the res judicata analysis. "The basic requirement is that the estopped party's interests have been sufficiently represented in the first action so that the application of collateral estoppel is not inequitable."  Id.  (emphasis added).  Here, the party against whom res judicata is being

institution of unlawful policies and failure to train and supervise regarding arrests, detentions, searches and deprivation of property, were all raised in plaintiff's previous federal cases or could have been raised in these cases, as they arise out of the same nucleus of facts.  Specifically, plaintiff's claims of unlawful arrest, detention, search and deprivation of property were addressed and rejected by Judge Doty in <u>O'Neal v. Fang - sic Vang, et al</u>.  <u>See</u> Order dated December 29, 2005 (J. Doty), pp. 2-8.  Likewise, plaintiff's present claims in Count V of creation of the creation of an unlawful property policy by Officer Vang, the City of St. Paul, City Attorney Cervantes and Chief Harrington, and the failure of Chief Harrington and the City of St. Paul to properly train and supervise Officer Vang on proper property procedures were raised by plaintiff and addressed in the Court's summary judgment decision in <u>O'Neal v. Moore, et al</u>.

In <u>O'Neal v. Moore, et al</u>., plaintiff had asserted claims against the City of St. Paul: that the City had unlawful policies, practices, customs and procedures regarding the creation and disclosure of records in violation of plaintiff's civil rights (Count XI, XIX); that the City had failed to train and supervise its employees, including Officer Vang, on the MGDPA, civil rights violations and with respect to the creation of accurate property records (Count XV, XIX); and that the City failed to draft reports, accurate records, and accurate transcripts in violation of his rights under various federal statutes and his right to equal protection under the law (Count XVI, XIX and XXV).

In addressing Counts XI, XV and XIX of plaintiff's Second Amended Complaint in <u>O'Neal v. Moore, et al</u>., where plaintiff had asserted that the City of St. Paul had

---

asserted – <u>i.e.</u> the person against whom estoppel is being sought – is plaintiff, not Manthei and Harrington.

instituted unlawful policies, practices, customs and procedures, and had failed to properly train and supervise Officer Vang in the preparation of property records, the Court found that plaintiff had not established the existence of a policy, practice, custom or procedure which caused an alleged constitutional violation or violation of federal law, and that apart from his mere allegation that such policies, practices, customs and procedures exist, plaintiff offered no evidence in support of those allegations.  See O'Neal v. Moore, 2008 WL 4417327 at *29.  Similarly, with respect to plaintiff's claims that the City of St. Paul failed to train and supervise Officer Vang in the creation of accurate property records, the Court concluded that plaintiff had failed to put forth facts to support a failure to train or supervise.  Id. at *29-30.

While neither O'Neal v. Fang -sic Vang, et al. nor O'Neal v. Moore, et al. involved claims by plaintiff that the City or its employees had created unlawful arrest and detention procedures and policies, or had failed to provide proper training and supervision of Officer Vang on such procedures and policies, these are claims which were or could have been raised in either action, as they arise out of same nucleus of operative facts as these suits.  As such, the Court finds that these claims are also barred by the doctrine of res judicata.[8]

---

[8]    Even if plaintiff's claims that the City of St. Paul, City Attorney Cervantes and Chief Harrington had created and acquiesced to an unlawful policy and procedure with respect to arrests and detentions, and they had failed to train and supervise Officer Vang on proper arrests and detentions, were not barred by the doctrine of res judicata, summary judgment is appropriate because as the City Defendants argued, plaintiff has failed to come forward with any evidence to support, much less establish, any of the elements of these claims.

For a municipality to be liable under § 1983 for an unlawful municipal policy or custom, the claimant must show that policy or custom was the "moving force [behind] the constitutional violation."  Monell v. Dep't of Soc. Servs., 436 U.S. 658, 690-91, 98 S.Ct.

2018, 56 L.Ed.2d 611 (1978).  An "[o]fficial policy involves a deliberate choice to follow a course of action ... made from among various alternatives [ ] by an official who is determined by state law to have the final authority to establish governmental policy." Ware v. Jackson County, Mo., 150 F.3d 873, 880 (8th Cir.1998) (quotations and brackets omitted).  A custom is "demonstrated by (1) [t]he existence of a continuing, widespread, persistent pattern of unconstitutional misconduct by the governmental entity's employees; (2) [d]eliberate indifference to or tacit authorization of such conduct by the governmental entity's policymaking officials after notice to the officials of that misconduct; and (3) [t]he plaintiff's injury by acts pursuant to the governmental entity's custom, i.e., proof that the custom was the moving force behind the constitutional violation." Id. (brackets omitted).  In this case, plaintiff has not established the existence of a policy, practice, custom or procedure on arrests or detentions which caused an alleged constitutional violation or violation of federal law.  Apart from his mere allegation that such policies, practices, customs and procedures exist, plaintiff offered nothing to show there was a continuing, widespread and persistent pattern of unconstitutional or federally prescribed conduct, that policymaking officials were indifferent to such conduct, or that such conduct was the force behind the alleged constitutional violations.

A municipality may be liable for a failure to train only where the failure to train amounts to "deliberate indifference" to the rights of those with whom the employees of a municipality come into contact.  See City of Canton, 489 U.S. at 388; see also Gatlin ex rel. Gatlin v. Green, 227 F.Supp.2d 1064, 1078 (D.Minn. 2002) ("city may be liable for deficient training when its policies are inadequate, and where it can be shown to be deliberately indifferent to the rights of others in adopting those polices.") (citation omitted).  In addition, a municipality's failure to train must result in the plaintiff's injury. See City of Canton, 489 U.S. at 391.

In order to make out a claim for failure to supervise, it must be shown that the offending party:

> (1)  Received notice of a pattern of unconstitutional acts committed by subordinates;
>
> (2)  Demonstrated deliberate indifference to or tacit authorization of the offensive acts;
>
> (3)  Failed to take sufficient remedial action; and
>
> (4)  That such failure proximately caused injury. . . .

Otey, F.3d at 1155 (quoting Jane Doe A. v. Special Sch. Dist. of St. Louis County, 901 F.2d 642, 645 (8th Cir. 1990)).  Under Eighth Circuit jurisprudence, it is necessary to demonstrate that:

> [I]n light of the duties assigned to specific officers or employees the need for more or different training is so

Because <u>O'Neal v. Fang -sic Vang, et al</u>. and <u>O'Neal v. Moore, et al.</u> resulted in a final judgment on the merits, were based on proper jurisdiction, involved the same defendants or defendants in privity with defendants alleged in the instant case (City of St. Paul, Officer Vang, and City Attorney Cervantes), were based upon the same facts arising from and subsequent to the incident on August 15, 2005 as are alleged here, and either asserted or could have asserted the same claims or causes of action as are alleged in Counts I, IV and V of the Amended Complaint, the Court finds that all of these Counts are barred based on the doctrine of res judicata.

---

obvious, and the inadequacy so likely to result in the violation of constitutional rights, that the policymakers of the city can reasonably be said to have been deliberately indifferent to the need. In other words, the plaintiff must demonstrate that the city had notice that its procedures were inadequate and likely to result in a violation of constitutional rights.

<u>Otey</u>, F.3d at 1156 (citing <u>Andrews v. Fowler</u>, 98 F.3d 1069, 1076 (8th Cir. 1996)). Generally, one case of misconduct by a subordinate employee is not sufficient to prove a claim under § 1983 for inadequate training and supervising, as there would be an insufficient notice required for a showing of deliberate disregard. <u>See Patzner v. Burkett</u>, 779 F.2d 1363, 1367 (8th Cir. 1985) (citing <u>Oklahoma City v. Tuttle</u>, 471 U.S.808 (1985)); <u>see also Weseman v. Meeker County</u>, 659 F. Supp. 1571, 1579 (D. Minn. 1987).

Plaintiff has offered this Court neither evidence nor argument as to why the training and supervision of its employees, including Officer Vang, was inadequate. Further, even if this Court were to find that Officer Vang's arrest and detention of plaintiff was unlawful, Officer Vang's singular encounter with plaintiff was not sufficient to give the City of St. Paul and its employees, City Attorney Cervantes and Chief Harrington, notice that their lack of training or supervision of him was inadequate and likely to result in a violation of constitutional or federal rights. In other words, based on the record before the Court, there is no direct or circumstantial evidence from which this Court could conclude that the City of St. Paul had the requisite knowledge to infer that its failure to train and supervise Officer Vang was inadequate and likely to result in a violation of any laws of the United States.

For the foregoing reasons, the Court finds that based on <u>Heck v. Humphrey</u>, and the doctrine of res judicata, all of plaintiff's claims against the City Defendants are barred and that their Motion to Dismiss should be granted.

## V.   RAMSEY COUNTY DEFENDANTS' MOTION TO DISMISS OR FOR SUMMARY JUDGMENT[9]

Plaintiff made the following allegations against the Ramsey County Defendants: In Count II, plaintiff alleged that Ramsey County and Sheriff Fletcher discriminated against him with respect to his detention.  Am. Complaint, ¶ 34.  Specifically, plaintiff stated that Ramsey County and Sheriff Fletcher permitted him to remain in a holding cell for 9 ½ hours without providing him the opportunity to post bail or appear before a magistrate.  <u>Id.</u>, ¶ 34.  As such, plaintiff asserted that Ramsey County created an unlawful policy, practice, custom or procedure, and failed to properly train or supervise Sheriff Fletcher.  <u>Id.</u>, ¶ 35.  Furthermore, plaintiff claimed that Sheriff Fletcher failed to properly train or supervise his deputy sheriffs.  <u>Id.</u>, ¶ 36.

In Count III, plaintiff charged Ramsey County, Ramsey County Attorney Gaertner and claims administrator Leske with obstruction of justice, misrepresentation, deceit and fraud.  These claims were based on plaintiff's allegations that the subpoenaed documents he received from Ramsey County, including a copy of a U.S. Bank check issued to him, were manufactured in order to discredit him and to obstruct justice in

---

[9]      In his response opposing the Ramsey County Defendants' Motion to Dismiss or for Summary Judgment, plaintiff appears to bring a Rule 11 Motion for Sanctions.  <u>See</u> Plaintiffs Rules 11. Et. Seq. Contempt Sanctions Response Opposing Defs., Ramsey, Rules, 12(b)(6). & Rules, 56(c). Memorandum [Docket No. 24].  Plaintiff claims that the Ramsey County Defendants should be sanctioned for failure to withdraw the allegedly false allegations contained in their motion.  For the reasons set forth in this Report and Recommendation, and because the Court finds that summary judgment should be granted in favor of the Ramsey County Defendants, to the extent plaintiff is requesting sanctions, that request is denied.

another pending civil matter.  Am. Complaint, ¶¶ 38, 40, 41, 43.  Plaintiff further alleged that Ramsey failed to provide plaintiff with all of the records he sought via two separate subpoenas, and provided him with falsified records.  Id., ¶ 47.

In Count V, plaintiff alleged that Ramsey County, along with Officer Vang, the City of St. Paul, City Attorney Cervantes, and Chief Harrington instituted an unlawful policy for the seizure and intrusion of property, pursuant to which Officer Vang unlawfully removed and searched his property.  Am. Complaint, ¶ 62.  According to plaintiff, Officer Vang failed to follow the City's property record requirements set forth in policy 439.03 to inventory and itemize plaintiff's belongings; City Attorney Cervantes and Chief Harrington, acquiesced in the institution of the policy; and the City of St. Paul and Chief Harrington failed to provide proper training or supervision of Officer Vang.  Id., ¶¶ 63-65.  Accordingly, plaintiff charged that Officer Vang, the City of St. Paul, City Attorney Cervantes, Chief Harrington and Ramsey County instituted an unlawful property deprivation policy.

All of plaintiff's claims against the Ramsey County Defendants are based on the alleged violation of Minn. Stat. §363A and 42 U.S.C. §§ 1983, 1985(1)(2)(3), 1986 and 2000.

In their motion to dismiss or for summary judgment, the Ramsey County Defendants asserted as to Count II that there is no constitutional right to bail within 9 ½ hours.  Ramsey Def. Mem. in Support, pp. 11-13.   As to Count III, they maintained that the acts of retaining and distributing records related to an arrest do not violate the Constitution.  Id., pp. 10-11.  With respect to Count V, they argued that Ramsey County cannot be vicariously liable for the acts of Ramsey County Attorney Gaertner and

Sheriff Fletcher, and plaintiff has failed to establish liability against the County for the creation or implementation of an unlawful custom, policy, or failing to train its employees. Id., pp. 13-18. Finally, the Ramsey County Defendants asserted that claims administrator Leske, Deputy Sheriff Slatter and Unknown Deputy are entitled to qualified immunity. Id., pp. 18-19.[10]

Before addressing the merits of the arguments of the Ramsey County Defendants, the Court observes that with the exception of his § 1983 claim, the balance of plaintiff's claims against these defendants are premised on violations of state and federal discrimination laws, Minn. Stat. § 363A and 42 U.S.C. §§ 1985(1)(2)(3), 1986 and 2000.[11]  Other than merely claiming that defendants discriminated against him,

---

[10]   The Ramsey County Defendants also argued that to the extent that plaintiff was seeking declaratory relief against the City of St. Paul regarding its arrest policies, that plaintiff was in essence attacking his arrest and conviction.  Ramsey Def. Mem. in Support, pp. 19-21.  This Court has already determined that plaintiff was challenging his arrest and conviction with respect to the City Defendants, and that such claims are barred by Heck v. Humphrey.  However, the Court does not read plaintiff's Amended Complaint to make such a challenge with respect to Ramsey County Defendants.  Thus, the Court finds that the Heck v. Humphrey doctrine plays no role in their case.

[11]   Minn. Stat. § 363A et. seq. prohibits individuals against discrimination in a variety of different contexts.  For example, § 363A.12, subd. 1 protects individuals against discrimination "in the access to, admission to, full utilization of or benefit from any public service because of race, color, creed, religion, disability, national origin, marital status, sexual orientation, or sex…."  Public services include law enforcement services.  See State by Beaulieu v. City of Mounds View, 518 N.W.2d 567, 570 (Minn. 1994).

42 U.S.C. § 1985(1)(2)(3) provides:

(1) Preventing officer from performing duties

If two or more persons in any State or Territory conspire to prevent, by force, intimidation, or threat, any person from accepting or holding any office, trust, or place of confidence under the United States, or from discharging any duties thereof; or to induce by like means any officer of the United States to leave any State, district, or place, where his duties as

an officer are required to be performed, or to injure him in his person or property on account of his lawful discharge of the duties of his office, or while engaged in the lawful discharge thereof, or to injure his property so as to molest, interrupt, hinder, or impede him in the discharge of his official duties;

(2) Obstructing justice; intimidating party, witness, or juror

If two or more persons in any State or Territory conspire to deter, by force, intimidation, or threat, any party or witness in any court of the United States from attending such court, or from testifying to any matter pending therein, freely, fully, and truthfully, or to injure such party or witness in his person or property on account of his having so attended or testified, or to influence the verdict, presentment, or indictment of any grand or petit juror in any such court, or to injure such juror in his person or property on account of any verdict, presentment, or indictment lawfully assented to by him, or of his being or having been such juror; or if two or more persons conspire for the purpose of impeding, hindering, obstructing, or defeating, in any manner, the due course of justice in any State or Territory, with intent to deny to any citizen the equal protection of the laws, or to injure him or his property for lawfully enforcing, or attempting to enforce, the right of any person, or class of persons, to the equal protection of the laws;

(3) Depriving persons of rights or privileges

If two or more persons in any State or Territory conspire or go in disguise on the highway or on the premises of another, for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; or for the purpose of preventing or hindering the constituted authorities of any State or Territory from giving or securing to all persons within such State or Territory the equal protection of the laws; or if two or more persons conspire to prevent by force, intimidation, or threat, any citizen who is lawfully entitled to vote, from giving his support or advocacy in a legal manner, toward or in favor of the election of any lawfully qualified person as an elector for President or Vice President, or as a Member of Congress of the United States; or to injure any citizen in person or property on account of such support or advocacy; in any case of conspiracy set forth in this section, if one or more persons engaged therein do, or cause to be done, any act in furtherance of the object of such conspiracy, whereby another is injured in his person or property, or deprived of having and exercising any right or privilege of a citizen of the United States, the party so injured or deprived may have an action for the recovery of damages occasioned by such injury or deprivation, against any one or more of the conspirators.

plaintiff submitted no evidence to establish that his race, color, religion or disability was a factor in defendants' alleged wrongful conduct.   Lacking such evidence, plaintiff's claims of discrimination would fail on that basis alone.   Nevertheless, the Ramsey County Defendants have focused not on plaintiff's lack of proof of discrimination to support their motion, but rather they have concentrated on the underlying conduct that plaintiff has alleged to be unlawful to show as a matter of law that plaintiff cannot succeed on any of his claims against them.   Stated otherwise, it appears that the Ramsey County Defendants have presented two alternative contentions to defeat plaintiff's claims against them.   To the extent that plaintiff is seeking to hold any of the

---

42 U.S.C. § 1986 states:

> Every person who, having knowledge that any of the wrongs conspired to be done, and mentioned in section 1985 of this title, are about to be committed, and having power to prevent or aid in preventing the commission of the same, neglects or refuses so to do, if such wrongful act be committed, shall be liable to the party injured, or his legal representatives, for all damages caused by such wrongful act, which such person by reasonable diligence could have prevented; and such damages may be recovered in an action on the case; and any number of persons guilty of such wrongful neglect or refusal may be joined as defendants in the action; and if the death of any party be caused by any such wrongful act and neglect, the legal representatives of the deceased shall have such action therefor, and may recover not exceeding $5,000 damages therein, for the benefit of the widow of the deceased, if there be one, and if there be no widow, then for the benefit of the next of kin of the deceased. But no action under the provisions of this section shall be sustained which is not commenced within one year after the cause of action has accrued.

42 U.S.C. §2000(a) states in pertinent part that:

> All persons shall be entitled to the full and equal enjoyment of the goods, services, facilities, privileges, advantages, and accommodations of any place of public accommodation, as defined in this section, without discrimination or segregation on the ground of race, color, religion, or national origin.

defendants liable, they have focused their motion on § 1983 and submitted that plaintiff cannot as a matter of law show that the conduct of the Ramsey County Defendants violated the Constitution or laws of the United States.   Alternatively, defendants maintained that if plaintiff's claims are nothing more than claims against Ramsey County, then his suit against them must fail because he cannot show that any policy or custom of Ramsey County rose to the level of a constitutional violation or that any alleged constitutional violation was caused by inadequate training or supervision of the individual defendants.   That said, the Court now turns to the arguments of the Ramsey County Defendants.

Section 1983 provides in relevant part:

Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress,  . . . .

42 U.S.C. § 1983.

To avoid summary judgment in favor of a particular defendant on this § 1983 claim, a plaintiff must make an adequate showing of "(1) a violation of a constitutional right or federal law, (2) which was committed by a state actor (3) who acted with the requisite culpability and causation to violate the constitutional or federal right." Cox v. Sugg, 484 F.3d 1062, 1066 (8th Cir. 2007) (quoting Shrum v. Kluck, 249 F.3d 773, 777 (8th Cir. 2001).   See also Doe v. Wright, 82 F.3d 265, 268 (8th Cir. 1996) (citing Martinez v. California, 444 U.S. 277, 284 (1980) (quoting Baker v. McCollan, 443 U.S. 137, 140 (1979) (finding that in a § 1983 claim, the Court must first determine "[w]hether

the plaintiff has been deprived of a right 'secured by the Constitution and laws' of the United States.")).

### A.   Constitutional Right to Bail

Plaintiff alleged in Count II that he was detained for over 9 ½ hours without the opportunity to post bail or appear before a magistrate.   Plaintiff claimed that this conduct, resulting from an unlawful policy, practice, custom or procedure of Ramsey County, and the failure of the County to properly train or supervise Sheriff Fletcher and Sheriff Fletcher's failure to properly train or supervise his deputy sheriffs, entitled him to relief.  Am. Complaint, ¶¶ 34-36.

Rule 6.02, subd. 1, of the Minnesota Rules of Criminal Procedure implements a right to bail for all noncapital offenses.   State v. McMains, 634 N.W.2d 733, 735 (Minn.Ct.App. 2001) (citing State v. Brooks, 604 N.W.2d 345, 350-51 (Minn. 2000)). Furthermore, under the Fourth Amendment, an arrestee "may be detained only for as long as it takes to process 'the administrative steps incident to arrest.'" Wayland v. City of Springdale, 933 F.3d 668, 669 (8th Cir. 1991) (quoting Gerstein v. Pugh, 420 U.S. 103, 114 (1975)). "The facts of each case must be considered to determine whether a detainee is held unnecessarily."  Id.  A prompt judicial determination of probable cause is a prerequisite to an extended restraint on liberty following a warrantless arrest. Gerstein, 420 U.S. at 125; Wayland, 933 F.3d at 669.  The Supreme Court has ruled that a judicial determination of probable cause within 48 hours of arrest complies with the promptness requirement articulated in Gerstein.  County of Riverside v. McLaughlin, 500 U.S. 44, 56-57 (1991); United States v. Davis, 174 F.3d 941, 944 (8th Cir. 1999).

The Court finds that plaintiff's detention for 9 1/2 hours did not rise to the level of a constitutional violation or a violation of federal law.  The Court observes that plaintiff was arrested at around 1:30 a.m. (see Deitz Aff., Ex. H (Original Offense/Incident Report)), and that an immediate bail hearing or appearance before a magistrate would have been unreasonable.  Plaintiff was held far less than the 48 hours contemplated by Gerstein, and the Court finds that plaintiff was not held unnecessarily.  See McNichols v. Hennepin County, 2004 WL 1386158 at *2-3 (D.Minn. June 18, 2004) (detention without bail for 11 ½ hours found not to be unreasonable and not a Constitutional violation).  Further, as detention of plaintiff for 9 ½ hours violated neither the Constitution nor federal law, plaintiff's training and supervision claims also must fail.  As such, the Ramsey County Defendants' motion for summary judgment with respect to Count II should be granted.

### B. Retention and Distribution of Records

In Count III, plaintiff claimed that the documents he received in response to his subpoenas for records in August and September 2007 were false and were created and manufactured by Ramsey County claims administrator Leske, Deputy Sletter and an Unnamed Deputy Sheriff in order to discredit him and obstruct justice with respect to his federal case.  Ramsey County submitted that retaining or disclosing an arrest and detention record does not violate any Constitutional rights.  Ramsey Def. Mem., p. 10.

Plaintiff did not identify any particular Constitutional provision allegedly violated by the Ramsey County Defendants.  The Court observes that the Supreme Court has declined to establish fundamental privacy in an individual's arrest records.  In Paul v. Davis, 424 U.S. 693 (1976), the Supreme Court considered a case in which the

plaintiff's arrest record was retained and distributed to the public. The plaintiff in Paul brought a § 1983 action claiming that the charges reflected in the arrest record were false, and that his reputation was damaged by its distribution.  The Court found that the distribution of the arrest record did not violate plaintiff's constitutional rights and specifically rejected the plaintiff's due process claim, holding that "the interest in reputation asserted in this case is neither 'liberty' nor 'property' guaranteed against state deprivation without due process of law."  424 U.S. at 712.  The Court additionally found that the constitutional right of privacy does not prohibit the publication of "a record of an official act such as an arrest."  Id. at 713.  See also Hopewell v. Dunker, 56 F.3d 68 (Table), 1995 WL 329598 at *1 (8th Cir. 1995) (finding that the disclosure of arrest records ordinarily does not infringe upon any fundamental right to privacy).

Plaintiff has presented no evidence to support his claim that the records produced to him pursuant to subpoenas – the detention records, property records of the items taken from plaintiff upon his arrest, and the U.S. Bank check – contained any false or inaccurate information.   However, even if plaintiff could establish that the records produced to plaintiff in response to his subpoenas were false and had been manufactured by Ramsey County Defendants, the Court concludes that such conduct does not violate plaintiff's constitutional rights or any federal law.   Accordingly, it is recommended that the Ramsey County Defendants' motion for summary judgment with respect to Count IV be granted.[12]

---

[12]      As this Court has concluded that plaintiff has not made out a viable claim against the Ramsey County Defendants to support a claim under § 1983, it need not address their additional contentions that Ramsey County cannot be held vicariously liable for the individual defendants' actions, that Ramsey County cannot be found liable in its own right, and that the individual defendants Leske, Slatter and the Unknown Deputy are

entitled to qualified immunity.  Suffice it to say, that these arguments are meritorious as well for the following reasons:

First, any claims against Ramsey County Attorney Gaertner or Sheriff Fletcher have been made solely against them in their official capacities, and as such, are claims against Ramsey County.  See Johnson v. Outboard Marine Corp., 172 F.3d 531, 535 (8th Cir. 1999) (finding a suit against a public employee in his or her official capacity is merely a suit against the public employer).  Official-capacity suits "generally represent only another way of pleading an action against an entity of which an officer is an agent." Monell 436 U.S. at 690.  Accordingly, an official-capacity suit is, in all respects other than name, to be treated as a suit against the entity. Kentucky v. Graham, 473 U.S. 159, 166 (1989).

For a municipality to be liable under § 1983, a plaintiff must prove that a municipal policy or custom was the "moving force [behind] the constitutional violation." Monell, 436 U.S. at 690-91.  In this case, plaintiff has not established the existence of a policy, practice, custom or procedure which caused an alleged constitutional violation or violation of federal law.

Second, a municipality can also be liable under § 1983 for the inadequate training and supervising of its employees.  Plaintiff has offered this Court neither evidence nor argument as to why the training and supervision of Sheriff Fletcher or of other sheriff's deputies was inadequate.  Further, even if this Court were to find that Ramsey County failed to train or supervise Sheriff Fletcher, or that Sheriff Fletcher in turn failed to train or supervise his deputies, their sole encounter with plaintiff would not have been sufficient to put Ramsey County and Sheriff Fletcher on notice that their lack of training or supervision of deputies was inadequate and likely to result in a violation of constitutional or other federal rights.

Third, as to the Ramsey County Defendants argument that Deputy Leske, Deputy Slatter and the Unknown Deputy are entitled to qualified immunity, "'[g]overnment officials performing discretionary functions, generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'"  Winters v. Adams, 254 F.3d 758, 766 (8th Cir. 2001) (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)).  "The doctrine 'gives ample room for mistaken judgments but does not protect the plainly incompetent or those who knowingly violate the law.'"  Bagby v. Brondhaver, 98 F.3d 1096, 1098 (8th Cir. 1996) (quoting Ludwig v. Anderson, 54 F.3d 465, 470 (8th Cir. 1995); Malley v. Briggs, 475 U.S. 335 (1986)); see also Saucier v. Katz, 533 U.S. 194, 205 (2001) (stating that "[i]f the officer's mistake as to what the law requires is reasonable, however, the officer is entitled to the immunity defense").  "This accommodation for reasonable error exists because 'officials should not err always on the side of caution' because they fear being sued."  Hunter v. Bryant, 502 U.S. 224, 229 (1991) (quoting Davis v. Scherer, 468 U.S. 183, 195 (1984)).  "The obvious function of

## VI.    CONCLUSION

Plaintiff has litigated the incident of August 15, 2005 at the Radisson Hotel and subsequent related events, extensively in both state and federal court.   Because the claims of the present case were previously addressed or could have been addressed in cases brought by plaintiff in this District Court, plaintiff is barred from litigating the claims again against the City Defendants in this suit.   Additionally, to the extent that plaintiff has asserted claims against the City Defendants that would require this Court to

---

the qualified immunity rule is to excuse an officer who makes a reasonable mistake in the exercise of his official duties." Edwards v. Baer, 863 F.2d 606, 607 (8th Cir. 1988).

The applicability of the qualified immunity doctrine is a question of law and, when qualified immunity is raised as a defense, courts analyze the application of qualified immunity by first addressing "whether the allegations amount to a constitutional violation, and then, whether that right was clearly established." Sanders v. City of Minneapolis, Minnesota, 474 F.3d 523, 526 (8th Cir. 2007) (citing Saucier v. Katz, 533 U.S. 194, 201, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001)).

Recently, the Supreme Court ruled that courts no longer bound to follow the "inflexible" two-part inquiry for qualified immunity that had been required by Saucier v. Katz, 533 U.S. at 201-02. See Pearson v. Callahan, 129 S.Ct. 808, 812 (2009). "District courts and the courts of appeals should be permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." Id. at 818. The Supreme Court stated that "[o]ur decision does not prevent the lower courts from following the Saucier procedure; it simply recognizes that those courts should have the discretion to decide whether that procedure is worthwhile in particular cases." Id. at 822.

Plaintiff alleged that Leske, as a claims administrator of Ramsey County, conspired to violate the two subpoenas plaintiff issued to Ramsey County, and also obstructed justice by giving him falsified records in response to those subpoenas. Am. Complaint, ¶ 16. Regarding Deputy Slatter and the Unknown Deputy, plaintiff claimed that both of them were involved in the creation of falsified documents in order to discredit plaintiff in his civil action. Id., ¶¶ 18-19.

Leske, Slatter and the Unknown Deputy are entitled to qualified immunity because plaintiff has not shown in the first instance that their conduct amounted to a violation of a constitutional right.

invalidate his state trespass conviction, these claims cannot proceed based on the principles enunciated in <u>Heck v. Humphrey</u>. Finally, plaintiff's claims against the Ramsey County Defendants fail because plaintiff cannot make out any unlawful conduct by these defendants, much less conduct that rises to the level of a violation of the constitution or federal laws. For all of these reasons, this Court recommends that all defendants' motions be granted, that plaintiff's motions be denied, and that this case be dismissed in its entirety.

## RECOMMENDATION

For the reasons set forth above, it is recommended that:

1.     Plaintiff's First Application for Entry of Default Against Yileng Vang for Answer Failure [Docket No. 10] be DENIED;

2.     Plaintiff's Rules 56(c) Summary Judgement Motion [Docket No. 26] be DENIED;

3.     Plaintiff's Rules 56(c) Summary Judgement Motion [Docket No. 27] be DENIED;

4.     Defendants' City of St. Paul, Manuel Cervantes, John Harrington, Cory Manthei, and Yileng Vang Motion to Dismiss or for Summary Judgment [Docket No. 11] be GRANTED; and

5.     Defendants' Ramsey County, Patricia Leske, Bob Fletcher, Greg Slatter and Unknown Ramsey County Deputy Sheriff Motion to Dismiss or in the Alternative for Summary Judgment [Docket No. 16] be GRANTED.

Dated:        February 17, 2009

                                        _s/ Janie S. Mayeron_
                                        JANIE S. MAYERON
                                        United States Magistrate Judge

**NOTICE**

Under D.Minn. LR 72.2(b) any party may object to this Report and Recommendation by filing with the Clerk of Court, and serving all parties by **March 6, 2009**, a writing which specifically identifies those portions of this Report to which objections are made and the basis of those objections.  A party may respond to the objecting party's brief within ten days after service thereof.  All briefs filed under this Rule shall be limited to 3500 words.  A judge shall make a de novo determination of those portions to which objection is made.  This Report and Recommendation does not constitute an order or judgment of the District Court, and it is therefore not appealable directly to the Circuit Court of Appeals.